UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


MICHAEL M. PENNELL,                     )
                                        )
         Petitioner,                    )
                                        )
     vs.                                )          No. 4:16-CV-00352-SPM
                                        )
RONDA PASH,                             )
                                        )
         Respondent,                    )


## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Michael M. Pennell's

("Petitioner") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties

have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §

636(c)(1). (Doc. 16). For the following reasons, the petition for a writ of habeas corpus will be

denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently an inmate at the Boonville Correctional Center in Boonville,

Missouri. In 2011, a jury convicted Petitioner of the class B felony of distribution, delivery or sale

of a controlled substance, in violation of Mo. Rev. Stat. § 195.211 (Supp. 2012),[1] and he was

sentenced to fifteen years' incarceration.

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

In the Spring of 2010, the manager of a Pamida store, which housed a drop-off location
for UPS, contacted Detective Michael Murphy of the Northeast Missouri Task Force because the
manager believed that Jake Humphrey was dropping off packages related to drug activity. The
Pamida manager found it suspicious that Mr. Humphrey was spending $60 to ship incense and

---

[1] Due to a restructuring of the Missouri Revised Statutes, this is no longer the correct citation. As of January 1, 2017,
the statute under which Petitioner was charged is codified at Mo. Rev. Stat. § 579.040 (2018). The amendment was
not material to this case. Throughout this order, all further references to the statute will be to the revised version.

catalogs overnight. Humphrey was shipping packages to Rhonda Stevenson in Kansas City, Kansas. Rhonda Stevenson and [Petitioner] have four children together and live together in the house at the address to which the packages were being shipped.

In May of 2010, Kansas City drug enforcement officers intercepted a suspicious package being sent to Mr. Humphrey at an address in Palmyra, Missouri. The return address on the package showed "Common Scents" with an address corresponding to the vacant lot next to the residence occupied by Ms. Stevenson and [Petitioner]. Northeast Missouri Drug Taskforce officers posed as UPS delivery men and attempted to deliver the package to Mr. Humphrey in Palmyra without success.

The undelivered package contained a Pampers box which held about [nine] ounces of methamphetamine and [two] pounds of marijuana, intended for Mr. Humphrey.

(Res. Ex. C at 1–2).

Petitioner was arrested, and spoke to the police after waiving his *Miranda* rights. *Id.* at 2. Petitioner admitted to the police that he had on several prior occasions shipped methamphetamine and marijuana to Humphrey in Palmyra, Missouri. (Rep. Ex. I at 12). Petitioner admitted that he had shipped the package at issue, containing approximately nine ounces of methamphetamine and two pounds of marijuana in a Pampers box, to Humphrey. *Id.* Petitioner further told the police that he had been tracking the package after he delivered it to UPS, and believed there was a problem. *Id*. At that point, he called Humphrey and told him not to accept the package. *Id.*

In April 2013, the Missouri Court of Appeals, on direct appeal, affirmed Petitioner's conviction. (Res. Ex. C at 1). Petitioner subsequently filed a *pro se* Rule 29.15 Motion for post-conviction relief, asserting ineffective assistance of counsel from his trial counsel, Jim McConnell ("McConnell"), his appellate counsel, Alexa Pearson ("Pearson"), and his pretrial counsel. (Rep. Ex. I at 2). After the motion court appointed Cinda Eichler ("Eichler") to represent Petitioner, Petitioner requested an extension of time, which the motion court granted. *Id*. On October 24, 2013, Petitioner filed a *pro se* motion for abandonment, asserting that Eichler had a conflict of interest in that she knew both McConnell and Pearson because she worked in the same office as McConnell (the public defender's office in Columbia, Missouri) and she formerly worked with

Pearson. *Id.* On November 5, 2013, Eichler filed a Statement in Lieu of Filing a Rule 29.15 Amended Motion ("Statement"), in which she asserted that, having viewed the record and discussed the case with Petitioner, there were no additional claims to be raised. *Id.* The motion court set the case for a hearing on all pending matters. *Id.*

At the evidentiary hearing, Petitioner argued that the Statement constituted abandonment, and that while Eichler stated that she found no additional claims, he believed he did have additional meritorious claims. *Id.* Petitioner further alleged that the Statement was untimely filed. *Id.* Eichler testified that because she had filed the Statement on Petitioner's behalf, she had not abandoned him under the law. *Id.* at 3. The motion court denied Petitioner's motion for abandonment, and found that Eichler had no conflict. *Id.*

The motion court evaluated twenty-three claims alleged in Petitioner's *pro se* 29.15 motion, and subsequently denied the motion. (Res. Ex. K at 60–61). Petitioner appealed the motion court's decision to the Missouri Court of Appeals, arguing that the motion court erred by: 1) not inquiring *sua sponte* into the performance of both Petitioner and Eichler after she allegedly abandoned Petitioner by filing her statement out of time; 2) finding that Eichler did not abandon Petitioner; and 3) denying his claim that his trial counsel was ineffective for failing to challenge Missouri's jurisdiction to prosecute him. (Res. Ex. I at 4, 10). After finding these claims without merit, the Missouri Court of Appeals affirmed the decision of the motion court. *Id.* at 15.

On June 13, 2016, Petitioner filed his *pro se* petition for writ of habeas corpus in this Court, raising ten claims: 1) Petitioner was arrested without probable cause in violation of his Fourth Amendment rights; 2) Petitioner was charged without probable cause in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights; 3) the trial court was without jurisdiction because the crime occurred in Kansas, not Missouri; 4) Petitioner was denied his Sixth Amendment right

to counsel and Fourteenth Amendment right to due process because his pre-trial counsel had a conflict of interest; 5) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the police destroyed the notes taken during his alleged confession; 6) Petitioner's due process rights were violated when the trial court admitted evidence without a proper foundation; 7) Petitioner's Sixth Amendment right to a fair and impartial jury was violated because the jury pool did not include people of color; 8) Petitioner's Sixth and Fourteenth Amendment rights were violated when Petitioner was not allowed to confront State's witnesses; 9) Petitioner's due process rights were violated because the controlled substances admitted as evidence at his trial had been tampered with; and 10) Petitioner's Sixth and Fourteenth Amendment rights were violated when the state allowed the police to testify to the existence of Petitioner's confession after admitting the notes from the confession had been destroyed (Doc. 13).

## II. LEGAL STANDARDS

### A. Standard for Reviewing Habeas Corpus Claims on the Merits

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a). However, the judge may not issue the writ if an adequate and independent state-law ground justified the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977).

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of

underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under the AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the States court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529, 412-13 (2000). "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

**B. Procedural Default**

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

"Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)). "The procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,' *Coleman*, 501 U.S. at 730, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986).

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Id.* at 488. To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III. DISCUSSION

### A. Claims Addressed in State Court: Grounds One, Two, Three, Six and Nine

The following claims were addressed on the merits in a state court proceeding. As such, the AEDPA requires this court to exercise only limited deferential review of the underlying state court decision. 28 U.S.C. § 2254. This Court will grant relief only if the state's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

a. <u>Grounds One and Two: Arrested and Charged Without Probable Cause</u>

As Petitioner's first and second grounds for relief are very similar, this Court will consider them together. In Ground One, Petitioner alleges that he was arrested without probable cause in violation of his Fourth Amendment rights. (Doc. 13 at 5). In Ground Two, Petitioner alleges that he was charged without probable cause in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (*Id*. at 7). Despite Petitioner's allegations that his Fifth, Sixth, and Fourteenth Amendment rights have been violated, the grounds he pleads uniquely implicate the Fourth Amendment, which protects against "unreasonable searches and seizures" in the absence of probable cause. U.S. CONST. amend. IV. *See Gerstein v. Pugh*, 420 U.S. 103, 115 (1975) ("the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest"), and the Court will analyze the claims under only the Fourth Amendment.

The Supreme Court of the United States has held that Fourth Amendment claims are not cognizable in a federal habeas action unless a petitioner did not receive a "full and fair opportunity" to litigate. *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Eighth Circuit has interpreted *Stone* to allow Fourth Amendment claims as a cognizable basis for habeas relief in two distinct situations: (1) when the "state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) when "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir.

1994) (en banc) (adopting the Second Circuit's test set out in *Capellan v. Riley*, 975 F.2d 67, 70 (2nd Cir. 1992)).

The first part of the test is "simple enough—either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not)." *Id.* at 1272. Missouri provides a procedure for raising Fourth Amendment claims, including Missouri Supreme Court Rule 24.05 and Mo. Rev. Stat § 542.296, so Petitioner does not fall under the first exception to the *Stone*-bar. *See Wright v. Godert*, No. 4:15-CV-00720, 2019 WL 414807, at *8 (E.D. Mo. Feb. 1, 2019).

With respect to the second prong, whether a defendant was precluded from using the State's procedure due to an "unconscionable breakdown in the underlying process," the Eighth Circuit has stated that, "it will be the rare case where there is a failure of that mechanism that reaches constitutional dimensions." *Willett*, 37 F.3d at 1272. The Eighth Circuit further instructed that "federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Id.* at 1273. The State of Missouri unquestionably afforded Petitioner an opportunity for full and fair litigation of his claims. Additionally, there is no evidence that he may have been foreclosed from using the procedure because of an "unconscionable breakdown in the underlying process." *Id.* at 1272. Accordingly, Petitioner's Fourth Amendment claims are not cognizable under *Stone v. Powell*, and this Court will not grant relief on Grounds One and Two.

b. <u>Ground Three: Missouri Did Not Have Jurisdiction to Charge Petitioner</u>

Petitioner's third claim for relief alleges that the State did not have jurisdiction to charge him for this crime because his alleged criminal actions occurred in Kansas, and it was not Petitioner, but Missouri police officers, who brought the controlled substances into Missouri. (Doc.

13 at 8). Petitioner asserts that by allowing his criminal case to erroneously continue in Missouri State court, the State unconstitutionally violated Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (*Id*. at 8). The Missouri Court of Appeals addressed this claim in Petitioner's appeal from the denial of his 29.15 motion for post-conviction relief (Rep. Ex. I at 10-15).

This Court agrees with the Missouri Court of Appeals, and finds that the State's exercise of jurisdiction over the Petitioner did not violate his Fourth, Fifth, Sixth, or Fourteenth Amendment rights. To the extent Petitioner argues that the State did not have jurisdiction to charge him with a crime, Petitioner presents a question of state law. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts; "no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law") (quoting *Roche v. Scully*, 739 F.2d 739, 741–42 (2nd Cir. 1984) (internal citation omitted); *see also Higgins v. Smith*, 991 F.2d 440, 442 (8th Cir. 1993) (noting that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition). Therefore, the Missouri Court of Appeals' determination that the exercise of jurisdiction over Petitioner did not violate his constitutional rights was not "contrary to, [nor did it involve] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

Further, the Missouri Court of Appeals' finding that jurisdiction was proper was not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Mo. Rev. Stat. § 541.191.1 (2018) provides that the state of

Missouri has jurisdiction over an offense if: "(1) Conduct constituting any element of the offense or a result of such conduct occurs within [Missouri]; or (2) The conduct outside [Missouri] constitutes an attempt or conspiracy to commit an offense within [Missouri] and an act in furtherance of the attempt or conspiracy occurs within [Missouri]." The Petitioner attempted to commit the crime of delivery of a controlled substance in the state of Missouri, in conformity with § 541.191.1(2), when he knowingly delivered methamphetamine, a controlled substance, to a person in Palmyra, Missouri. Delivery is defined as "the actual, constructive, or *attempted* transfer from one person to another," and thus it is of no importance that Petitioner's package, containing the controlled substance, was intercepted before the delivery was physically completed. Mo. Rev. Stat. § 195.010(8) (2018) (emphasis added). Petitioner attempted to transfer the controlled substance from himself to Humphrey, who resided in Missouri, when he shipped the package to Humphrey's home address in Palmyra, Missouri, and tracked the package to assure its safe delivery.

Petitioner must have also committed an "act in furtherance of" the attempted offense within Missouri to provide jurisdiction under § 541.191.1(2). This requirement is often referred to as a "substantial step" in the commission of the crime. *See State v. Withrow*, 8 S.W.3d 75, 80 (Mo. 1999) (en banc). Section 562.012 of Missouri's Revised Statutes defines "substantial step" as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Petitioner not only tracked his package to assure it would safely be delivered to Humphrey in Missouri, but also called Humphrey and instructed him not to accept the delivery once he saw that the package had likely been intercepted by law enforcement. (Rep. Ex. I at 14). These facts establish Petitioner's continued participation in the crime after the controlled substances entered Missouri. Petitioner's actions constitute a substantial step in furtherance of the

unlawful delivery of a controlled substance, despite the fact that delivery was impossible due to police interception, because his actions strongly corroborate the purpose of the intended delivery. *See State v. Lammers*, 479 S.W.3d 624, 633 (Mo. 2016) (holding that purchasing assault rifles and practicing shooting them were substantial steps towards the commission of the offense of attempted first-degree assault).

The Missouri Court of Appeals also found that Missouri has criminal jurisdiction under § 541.191.1(1), stating that:

> "…while [Petitioner] placed the controlled substances in the mail in Kansas, the 'result of' of [sic] that offense occurred in Missouri when the drugs physically arrived here. *See Cummins v. State*, 912 S.W.2d 523, 524 (Mo. App. W.D. 1995) (regardless of whether drugs were delivered in Kansas or Missouri, because drugs were transported to Missouri, 'result of' delivery was in Missouri; thus, Missouri has criminal jurisdiction under Section 541.191.1(1)). Contrary to [Petitioner]'s apparent allegation…that it was the police, not him, who transported the drugs into Missouri, we find that it was [Petitioner] who legally delivered the drugs to Missouri. *See* [§§] 195.010(8) (delivery is defined as attempt to deliver), 195.211 (it is unlawful to deliver…controlled substances)."

(Rep. Ex. I at 14).

The Missouri Court of Appeals' determination that Missouri properly exercised jurisdiction over Petitioner was not "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Therefore, Ground Three of the instant petition is without merit and relief will not be granted on its basis.

### c. Grounds Six and Nine: Petitioner's Fourteenth Amendment Rights Violated by Improper Admission of Evidence

Petitioner's sixth and ninth grounds for relief are very similar, so this Court will consider them together. In Ground Six, Petitioner alleges that his Fourteenth Amendment right to due process was violated when the trial court admitted the box in which the controlled substances were

found, as well as the controlled substances themselves, into evidence without proper foundation. (Doc. 13 at 17). Specifically, Petitioner alleges that there was insufficient chain of custody evidence to link himself to the package, and thus, it should not have been admitted as an exhibit in the case against him. (*Id*.). In Ground Nine, Petitioner alleges that his due process rights were violated when the trial court admitted the controlled substances into evidence after they had been tampered with, specifically noting that a portion of the controlled substance was missing when it was admitted. (*Id*. at 23). Petitioner raised these claims on his direct appeal, and the Missouri Court of Appeals found that the trial court did not abuse its discretion when it admitted the box and the controlled substances into evidence. (Rep. Ex. C at 12-15).

This Court finds that the Missouri Court of Appeals correctly determined that admission of the box and the controlled substances into evidence did not violate Petitioner's Fourteenth Amendment right to due process. Proper admission of evidence is a question of state law. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Therefore, the Missouri Court of Appeals decision was not "contrary to, [nor did it] involve[ ] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

Further, the Missouri Court of Appeals decision was not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). With regard to Ground Six, Missouri precedent states that the determination of whether a sufficient chain of custody has been established for the admission of an exhibit is a matter within the sound discretion of the trial court. *State v. Bowman*, 337 S.W.3d 679, 689 (Mo. 2011) (en banc). The Missouri Court of Appeals described the relevant facts and analysis as follows:

"…Det. Joe Hays testified that he met two Kansas City drug enforcement officers in Brookfield on May 11, 2010, because they wanted Det. Hays to attempt a controlled delivery of an intercepted package in Palmyra, Missouri. Det. Hays identified the package as State's Exhibit 2. He stated it was closed and did not have evidence tape on it; any sign of police control would have foiled the plan for a controlled delivery. Det. Hays did not open the package but secured it in his office. The next morning, Det. Bouyae and Chief Deputy Rob Powers attempted to deliver the package to Jake Humphrey, but after two failed attempts, turned the evidence over to Lt. Talbert.

Lt. Talbert testified she recognized State's Exhibit 3, the methamphetamine taken from the Pampers box, by her signature at the top of the red seal. She was present at the task force office when the Pampers box was opened and the methamphetamine was taken from it, after the failed delivery occurred. Special Agent Dean Duke and Det. Murphy were also present with Lt. Talbert. Lt. Talbert testified she was present when Special Agent Duke opened the box and removed the methamphetamine from the clear plastic baggies in a plastic container, they photographed it, and then packaged it in the big plastic container and they both signed the seal. Special Agent Duke sent the exhibits to be analyzed at the crime lab in Chicago.

Det. Murphy, with the Northeast Missouri Task Force, testified that he recognized State's Exhibit 2 as well. Det. Murphy, who arrested [Petitioner] and participated in interviewing him with Lt. Talbert, testified that [Petitioner] admitted that he had sent methamphetamine and marijuana to Jake Humphrey using that particular Pampers box, marked as State's Exhibit 2 at trial. [Petitioner] further told officers he believed he had shipped approximately 9 ounces of methamphetamine and 2 pounds of marijuana. The box was shipped to Jake Humphrey at 210 A West Olive Street, Palmyra, Missouri. Its return address label stated Common Scents at 3009 Hiawatha, Kansas City, Kansas, which was the vacant lot next door to [Petitioner]'s home.

Edward Erisman, a forensic chemist at the DEA, testified that he tested State's Exhibit 3, which he recognized by his seal and signature. He said it had not been tampered with since he sealed it. Following the testing, DEA Special Agent Robert Hanson testified that he then received the exhibits for trial, the drug evidence custodian took custody of them and then turned them over to Agent Hanson, who transported them to Lt. Talbert for trial.

Here, in admitting the exhibits as evidence, the trial court heard testimony on the record that established a chain of custody from the time the Kansas City drug enforcement officers intercepted the package, up to the time the exhibits were presented at trial. Although Det. Hays did not know from where the Kansas City officers obtained the package, a gap in the chain of custody goes to the weight of the evidence offered, not its admissibility. *See State v. Reed*, 811 S.W.2d 50, 55 (Mo. App. S.D. 1991). The State was not required to provide evidence eliminating all possibility that the evidence had been disturbed, and the trial court also was allowed to assume that officials with custody of the exhibits properly discharged their duties and that no tampering occurred. *Bowman*, 337 S.W.3d at 689. No evidence was presented that the officers carried out their duties in bad faith or

> tampered with the evidence in any way. Additionally, [Petitioner] positively identified the exhibit during his interview with police. 'Any weakness[] in a witness's visual identification is a proper subject of cross-examination and may be considered by the jury in assessing the weight of the evidence.' *Id*."

(Resp. Ex. C at 12–15). This Court finds that the admission of the box and the controlled substances was reasonable in light of the evidence presented in the state court proceeding.

With regard to Ground Nine, Missouri precedent allows the trial court to assume, absent a showing of bad faith or tampering, that officials having custody of exhibits properly discharged their duties and that no tampering occurred. *Bowman*, 337 S.W.3d at 689. As the Petitioner offered no additional evidence, this Court concludes that the admission of the controlled substance as evidence was reasonable in light of the evidence presented in the State court proceeding.

Accordingly, the Missouri Court of Appeals' determination that the trial court did not err by allowing these items into evidence did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" nor did it "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the States court proceeding." 28 U.S.C. § 2254(d). Therefore, Grounds Six and Nine of the instant petition are without merit and relief will not be granted on their bases.

## B. Procedurally Defaulted: Grounds Four, Five, Seven, Eight, and Ten

Petitioner's remaining grounds for relief are as follows: Ground Four, Petitioner was denied his Sixth Amendment right to counsel and Fourteenth Amendment right to due process because his pre-trial counsel had a conflict of interest; Ground Five, Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the police destroyed the notes taken during his alleged confession; Ground Seven, Petitioner's Sixth Amendment right to a fair and impartial jury was violated when the state excluded people of color from the jury pool; Ground Eight, Petitioner's

Sixth and Fourteenth Amendment rights were violated when Petitioner was not allowed to confront State's witnesses; and Ground Ten, Petitioner's Sixth and Fourteenth Amendment rights were violated when the state allowed the police to testify to the existence of Petitioner's confession after admitting the notes from the confession had been destroyed. (Doc. 13. at 10-25). Respondent asserts that Petitioner's Grounds Four, Five, Seven, Eight, and Ten for habeas relief are procedurally defaulted, and thus not adequate bases for habeas relief. The Court agrees that these Grounds are likely procedurally barred[2] from federal court review. Petitioner did not properly raise them at the state level, and there is no indication he can show the requisite prejudice to overcome a procedural bar, or that he is actually innocent.

However, this Court's analysis of the alleged procedural default is complicated by a recent occurrence at the state level. Although the Missouri Court of Appeals had previously found that Petitioner was not abandoned by his post-conviction attorney, the Missouri Supreme Court recently held that filing a statement in lieu of amending a *pro se* 29.15 motion for post-conviction relief after the 60-day deadline created a presumption of abandonment. *State v. Latham*, 554 S.W.3d 397, 399 (Mo. 2018) (en banc), *specifically abrogating Pennell v. State*, 467 S.W.3d 367

---

[2] As discussed *supra*, to preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (*citing Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)). Cause for procedural default exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate prejudice, Petitioner must "shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" *Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (quoting *U.S. v. Frady*, 456 U.S. 152, 170 (1982)) (internal quotation marks omitted). In order to assert the fundamental miscarriage of justice exception to default, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (*quoting Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

(2015). Under *Latham*, because Petitioner's post-conviction attorney filed the Statement after the 60-day deadline, Petitioner was abandoned by his post-conviction counsel. (Res. Ex. I at 6). Furthermore, abandonment by post-conviction counsel has been held to be a valid cause for not bringing a procedurally defaulted claim. *Maples v. Thomas*, 565 U.S. 266, 288–89 (holding that counsel's abandonment of petitioner in the post-conviction proceedings constituted "ample cause" to excuse default). Accordingly, Petitioner's abandonment could well provide sufficient cause to overcome the procedural bar that would otherwise apply to Grounds Four, Five, Seven, Eight, and Ten.

This issue introduces an unusual wrinkle into this Court's analysis of the alleged procedural default of Petitioner's claims. Further, because *Latham* was decided long after the state responded to Pennell's petition for habeas relief, Respondent has not had an opportunity to address this particular issue. Under these circumstances, rather than definitively determine whether these claims are procedurally barred, the Court will simply bypass the issue and address his claims, because it is clear they warrant no relief. *See Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (although procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if they are easily resolved and the procedural bar issues are more complicated); *see also Chambers v. Bowersox*, 157 F.3d 560, 564 n.4 (8th Cir. 1998) ("the simplest way to decide a case is often the best").

a. Ground Four: Petitioner Denied Sixth and Fourteenth Amendment Rights due to Pretrial Counsel's Conflict of Interest

In Ground Four, Petitioner claims that his right to counsel and due process rights were violated because his pretrial counsel had a conflict of interest, and he thus received ineffective assistance of pretrial counsel. (Doc. 13 at 11). Specifically, Petitioner alleges that his pretrial

counsel ("Hoover") was concurrently representing one of the state's witnesses against him, and therefore could not provide effective assistance to him. *Id.*

To succeed on an ineffective assistance of counsel claim, Petitioner must show 1) that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) that Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard is a high-bar to pass as "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. However, this court need not determine whether counsel's performance was deficient, because Petitioner clearly was not prejudiced by his counsel's performance. Under *Strickland*, Petitioner must show that but for his counsel's errors, the result of the proceeding would have been different. *Id.* at 694. Petitioner cannot make such a showing.

After Hoover began representing Petitioner, another one of Hoover's clients was offered a deal to testify against Petitioner. (Res. Ex. O at 80–81). At Petitioner's 29.15 hearing, Hoover testified that there was no conflict of interest when he entered his appearance on behalf of Petitioner, and as soon as the conflict arose, he withdrew. *Id.* Additionally, there is no evidence to suggest that Petitioner was prejudiced by having an attorney other than Hoover represent him. For these reasons, Petitioner was not prejudiced by Hoover's alleged conflict of interest, and, consequently, Petitioner is not entitled to habeas relief on his ineffective assistance of pretrial counsel claim, and the Court will deny relief on Ground Four.

      b.   <u>Ground Five: Petitioner's Fifth, Sixth, and Fourteenth Amendment Rights Violated by Destruction of Evidence</u>

In Ground Five, Petitioner claims that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the police destroyed the notes taken by Lieutenant Patti Talbert during

his confession (Doc. 13 at 1). A due process violation based on the destruction of evidence is analyzed under two different standards, depending on whether it is potentially useful or materially exculpatory. *Daughty v. Purkett*, No. 4:04CV00793-ERW, 2007 WL 2609823, at *3 (E.D. Mo. Sept. 5, 2007) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)). If the evidence would have been materially exculpatory, then there need not be a determination of whether the police were acting in good faith when they destroyed the evidence, but if the evidence would not have been exculpatory, and would have merely been potentially useful, then the good faith of the officers precludes such a due process claim. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988).

In the instant petition, there is no evidence that the interview notes in question would have contained exculpatory evidence. Every police officer that interviewed Petitioner testified that Petitioner admitted to sending controlled substances to Humphrey through the mail. *See generally* (Res. Ex. P at 244–341). Additionally, Petitioner does not assert any evidence to support a claim that the interview notes were in any way inconsistent with the officers' testimony. If Petitioner cannot show that the evidence would have been exculpatory, then he must show that the police acted in bad faith when they destroyed evidence in question. *Youngblood*, 488 U.S. at 57. There is no evidence that the police officers acted in bad faith when destroying the notes from their interview with Petitioner. Lieutenant Talbert, who took notes during the interview with Petitioner, testified that she destroyed the notes only after she typed her report. (Res. Ex. P at 316). She testified that this is her customary procedure because she no longer has any use for her interview notes after she integrates them into her reports. *Id.* In sum, Petitioner cannot show that the evidence was exculpatory or that the police officer acted in bad faith when she destroyed the interview notes. For these reasons, Ground Five is without merit and the Court will deny relief on its basis.

c.   Ground Seven: Exclusion of People of Color From the Jury Pool

In Ground Seven, Petitioner claims[3] that his Sixth Amendment rights were violated by the exclusion of people of color from the jury pool, and that his trial counsel was ineffective for failing to challenge the racial makeup of the venire panel and for failing to file a motion for a change of venue to achieve a more diverse jury pool. He further asserts that his appellate counsel was ineffective for failing to bring on appeal a claim for ineffective assistance of trial counsel based on these alleged errors. (Doc. 13 at 19).

Petitioner's claim that trial counsel was ineffective for failing to challenge the racial makeup of the venire panel is without merit. To succeed on an ineffective assistance of counsel claim, Petitioner must show 1) that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) that Petitioner was prejudiced by counsel's failure. *Strickland*, 466 U.S. at 687. Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). This Court need not analyze the performance prong of *Strickland* because Petitioner fails to demonstrate any prejudice caused by the allegedly deficient performance. *See Id.* at 697; *Williams v. Locke*, 403 F.3d 1022, 1025 (8th Cir. 2005). To show prejudice, Petitioner must show that there is a "reasonable probability," which is a probability sufficient to undermine confidence in the outcome, that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

---

[3]  It is not entirely clear from the face of his Petition what he is claiming in Ground Seven, but Petitioner refers repeatedly to his 29.15 motion, asserting that this same claim was found therein. In that motion, he clearly asserted ineffectiveness of counsel for failing to object to the racial makeup of the jury pool, and ineffectiveness of appeal counsel for failing to raise that claim. This Court will analyze Ground Seven accordingly.

Petitioner is a black man and argues that his jury pool was comprised of entirely white men and women, resulting in a violation of his Sixth Amendment right to a "fair and impartial jury." (Res. Ex. K at 21); *See Phea v. Benson*, 95 F.3d 660, 662 (8th Cir. 1996) ("A defendant is guaranteed a jury chosen from a fair cross section of the community."). To establish a Sixth Amendment violation based on these allegations, one must show:

> (1) that African–Americans are a "distinctive group in the community;" (2) that the representation of African–Americans in jury pools is not "fair and reasonable in relation to the number of [African–Americans] in the community;" and (3) that "this under-representation is due to systematic exclusion of [African–Americans] in the jury-selection process."

*Wharton-El v. Nix*, 38 F.3d 372, 376 (8th Cir. 1994) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Even if this Court were to assume the first two requirements are met, Petitioner does not provide any evidence that there was a systematic exclusion of black people from the jury pool. At most, Petitioner has demonstrated an underrepresentation of black people in his case alone. *See Phea*, 95 F.3d at 662. The Eighth Circuit has held that "[e]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." *Phea*, 95 F.3d at 662 (quoting *Singleton v. Lockhart*, 871 F.2d 1395, 1399 (8th Cir. 1989)). In the absence of "any actual systematic exclusion," there cannot be prejudice "springing from ineffective assistance based on the failure to raise…the issue" of exclusion in violation of the Sixth Amendment. *Wharton-El*, 38 F.3d at 376. Accordingly, this Court finds that Petitioner was not prejudiced by his trial counsel's failure to challenge the racial makeup of the venire panel on Sixth Amendment grounds, and, consequently, Petitioner's trial counsel was not ineffective under *Strickland*.

Petitioner's claim that trial counsel was ineffective for failing to request a change of venue from Marion County to a more diverse county is likewise without merit. (Res. Ex. K at 21). This Court does not need to determine whether a reasonably competent attorney would have filed

a motion for change of venue because Petitioner was likewise not prejudiced by this choice. *See Strickland*, 466 U.S. at 697; *Williams v. Locke*, 403 F.3d 1022, 1025 (8th Cir. 2005). To show prejudice under *Strickland*, Petitioner must show that if his trial counsel had requested a change of venue, there was a reasonable probability that the outcome of his case would have been different. *See Strickland* 466 U.S. at 694. Petitioner falls far short of this standard.

Considering the totality of the evidence, it is not likely that a change of venue would have affected the outcome of this case. *Id.* at 695. Though *Strickland* lays out a test for prejudice, the Supreme Court has held that the "ultimate inquiry must concentrate on the fundamental fairness of the proceeding," and there was nothing fundamentally unfair about Petitioner's trial. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Petitioner does not have a constitutional right to a venire of any particular racial makeup, but rather has the right to a jury pool representative of a cross section of the county within which the court is located. *United States v. Adkinson*, No. 17-3381, 2019 WL 625146, at *2 (7th Cir. Feb. 14, 2019) (citing *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)). Petitioner does not allege that an all-white jury pool was unrepresentative of the population of Marion County. Furthermore, the weight of the evidence presented at trial is such that any reasonable jury would have found Petitioner guilty. Multiple police officers testified under oath that Petitioner confessed to shipping the controlled substances to Humphrey, the return address on the package containing the controlled substances corresponded to a vacant lot adjacent to Petitioner's home, and Petitioner did not take the stand to refute the evidence against him. (Res. Ex. C at 1–2; Res. Ex. P at 259, 312, 350). For these reasons, this Court finds that Petitioner was not prejudiced by his trial counsel's failure to request a change of venue, and, consequently, Petitioner's trial counsel was not ineffective under *Strickland*.

It follows as a matter of course that Petitioner's claim that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal is without merit. As discussed above, Petitioner's claims of ineffective assistance of trial counsel would not have succeeded on direct appeal. Ineffective assistance claims cannot succeed where the argument counsel failed to make was without merit. *See, e.g. Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (claim of ineffective assistance of appellate counsel must fail where a court has already rejected as meritless the claim that a petitioner asserts counsel should have pursued). Accordingly, Petitioner's appellate counsel was not ineffective for failing to raise these claims on appeal.

For the above stated reasons, Petitioner is not entitled to habeas relief on Ground Seven.

> d. <u>Ground Eight: Petitioner's Sixth and Fourteenth Amendment Rights Were Violated When Petitioner Was Barred from Confronting State's Witnesses</u>

In Ground Eight, Petitioner claims that his Sixth and Fourteenth Amendment rights were violated when Petitioner was not allowed to confront state's witnesses Jessica Dent and Dean Duke. The Confrontation Clause in the Sixth Amendment is only implicated when a witness testifies at trial, or when their out-of-court statements are introduced at trial. *See Crawford v. Washington*, 541 U.S. 36 (2004). Neither Dent nor Duke testified at trial. *See generally* (Res. Ex. P). Furthermore, Petitioner does not assert that their statements were used against him at trial. Therefore, the Confrontation Clause is not implicated. For these reasons, this Court finds that Ground Eight is without merit and relief will not be granted on its basis.

> e. <u>Ground Ten: Petitioner's Rights Were Violated When the State Allowed Police to Testify About the Existence of Petitioner's Confession Even Though the Interview Notes Were Destroyed</u>

In Ground Ten, Petitioner claims that his Sixth and Fourteenth Amendment rights were violated when the trial court allowed Lieutenant Talbert and Detective Murphy to testify regarding Petitioner's confession, even though the notes taken during his confession were destroyed.

It is not clear to the Court precisely which Sixth Amendment right(s) Petitioner alleges were violated by allowing the officers to testify concerning statements made during his interrogation. If Petitioner is invoking a Confrontation Clause concern, his claim has no merit, since the officers who heard his confession testified to such at trial, and Petitioner had every opportunity to cross-examine them. *See California v. Green*, 399 U.S. 149, 161 (1970) (no violation of Confrontation Clause where defendant is afforded a right to cross-examine a witness in an effort to evaluate the truth of the statement).

As to Petitioner's contention that the testimony should not have been allowed because the police officers failed to maintain their records of the interview, this claim is also without merit. There is no federal constitutional requirement that law enforcement officers electronically or otherwise document or record custodial interrogations, and no requirement that any such recording be retained. *See United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005) (no constitutional requirement that confession be recorded by any particular means). It follows that the absence of an external record of what was said does not prevent an officer from testifying regarding the contents of an unrecorded confession.

Nor does the officers' testimony appear to violate any of Petitioner's other federal constitutional rights. Under *Dickerson v. United States*, 530 U.S. 428 (2000) statements made during custodial interrogations are admissible if the defendant was properly advised of (and waived) his *Miranda* rights, and his statements were voluntary in light of the totality of the circumstances. *Id*. at 432-35, 444. Petitioner does not argue that his statement was involuntary or that he did not properly waive his *Miranda* rights. Thus, there is nothing to suggest that the testimony concerning his confession was improper. Ground Ten fails on its merits.

## V. CONCLUSION

For all the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C § 2253(c)(1)A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). This court finds that reasonable jurists could not differ on Petitioner's claims, so that the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED** as moot.

A separate Judgment shall accompany this Memorandum and Order.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of March, 2019.